LILLIAN LABBEE *v.* DONALD F. ANDERSON ET AL.

LOUISE PALLIER *v.* DONALD F. ANDERSON ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and PARMELEE, Js.

Argued October 10—decided November 21, 1961

*William W. Sprague* and *John R. FitzGerald,* for the appellants (defendants) in each case.

*William R. Davis,* with whom, on the brief, was

*Leon RisCassi,* for the appellee (plaintiff) in each case.

KING, J. The plaintiffs were struck and knocked down by a car driven by the named defendant, hereinafter referred to as the defendant, and owned by his father, the other defendant. The plaintiffs were walking, side by side, from the southwest corner to the northwest corner of the intersection of Main Street and Middle Turnpike in Manchester. The plaintiff Labbee was at the left of the plaintiff Pallier. They had completed about three-fourths of the crossing when they were struck. Middle Turnpike runs east and west, and Main Street runs north and south. Both streets are of about equal width. Traffic is controlled by an overhead light. The plaintiffs were on a marked crosswalk and their clothing was relatively light in color. The accident occurred at about 9:30 in the evening of April 8, 1957. It was drizzling. The Anderson car was proceeding in a northerly direction on Main Street. The jury could have found that the defendant stopped the car for the traffic light and that when the light changed to green he put the car in motion. As he was making a left turn to go west on Middle Turnpike, a passenger shouted to him. He stopped the car almost instantly, but not before the left front fender had struck the plaintiffs. There was no evidence that the defendant was operating his car at all rapidly. The intersection was relatively well lighted, but the defendant admitted that his left window was fogged so that he could not see through it and that he had made no attempt to clear it or lower it.

The jury brought in a defendants' verdict in each case. The court was impressed with the plaintiffs

and their witnesses. It set aside the verdicts, ruling, in effect, that the jury were required to accept the plaintiffs' evidence and that on that evidence they were compelled to find negligence and were precluded from finding contributory negligence. The instances where such a ruling can properly be made, especially in the absence of controlling indisputable physical facts, are rare indeed; otherwise, the constitutional guarantee of trial by jury would have little force. *Mlynar* v. *A. H. Merriman & Sons, Inc.,* 114 Conn. 647, 650, 159 A. 658. Even if the court below, or this court, felt that the jury would have used better judgment if they had returned plaintiffs' verdicts, this, without more, gives no right to set the verdicts aside. *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352; *Schlag* v. *Paffney,* 103 Conn. 683, 685, 131 A. 420; *Robinson* v. *Backes,* 91 Conn. 457, 460, 99 A. 1057. Nowhere in the memorandum of decision does the court suggest that anything occurred during the trial which could have inflamed or prejudiced the jury against the plaintiffs or that there were any inadvertences in the charge. The sole ground advanced for believing that the jury "did not correctly apply the law to the facts in evidence" was that the court felt that the verdict was "clearly against the weight of the evidence."

It is unnecessary to consider the question of the defendants' negligence, since the verdicts might have been based on a finding that the defendants had proven one or more of their specifications of contributory negligence, which included an allegation that the plaintiffs failed to exercise reasonable care as to lookout in making the crossing. As the court pointed out, there were few significant conflicts in the evidence. But a finding as to contribu-

tory negligence would be more than a mere determination of the credibility of witnesses as to conflicting factual details. It would involve a determination of whether the defendants had proven that the plaintiffs, on the facts as the jury found them, failed to exercise that amount of care as to lookout which a reasonably prudent person would have exercised under the same circumstances. *Drobish* v. *Petronzi,* 142 Conn. 385, 387, 114 A.2d 685. Even if we assume, as did the court, that the jury had to find that the plaintiffs had obeyed the overhead light and so had a statutory right of way on a marked crosswalk under §§ 14-299 and 14-300 of the General Statutes, the plaintiffs still, by a permissible construction of the evidence, might have been found negligent in the use of that right of way.

The present case is basically indistinguishable from *Drobish* v. *Petronzi,* supra. Factually the two cases are surprisingly similar, the principal difference being that here the plaintiffs' clothing may have been somewhat lighter in color. There the court found for the defendant, as the jury did here. We affirmed on the ground that the court could have properly found that the plaintiff made a negligent use of her right of way as a pedestrian on a marked crosswalk in failing to be sufficiently alert. Here, there was testimony, although somewhat uncertain, to the effect that the plaintiffs, when about half way across the street, glanced toward the east or perhaps a little to the southeast. They testified, however, that they saw nothing until they found themselves on the ground. The jury were privileged to find that if the plaintiffs had been in the exercise of reasonable care as to lookout, they would have seen the defendants' car, and that had they done so, they would have avoided the accident.

There is error in both cases and they are remanded with direction to render judgments on the verdicts.

In this opinion MURPHY and SHEA, Js., concurred.

BALDWIN, C. J. (dissenting). The trial court in a memorandum of decision carefully analyzed the evidence offered by both parties. The memorandum states that the evidence was "exceptionally free of conflict," that it was "abundantly clear that the collision resulted from the defendant driver's failure to see the plaintiffs when he should have seen them," and that the verdict was "so clearly against the weight of the evidence as to indicate that the jury did not correctly apply the law to the facts in evidence." See *Butler* v. *Steck,* 146 Conn. 114, 117, 148 A.2d 246, quoting *Howe* v. *Raymond,* 74 Conn. 68, 71, 49 A. 854. A judge sitting with a jury is not a mere umpire in a forensic encounter. He is there to try the case with the jury and to see that justice is done. He sees and hears the witnesses and senses the atmosphere of the trial as we cannot on the cold record. *Howe* v. *Raymond,* supra; *Cables* v. *Bristol Water Co.,* 86 Conn. 223, 225, 84 A. 928. He exercises a broad legal discretion, and his action should not be disturbed unless there is a clear abuse. *Butler* v. *Steck,* supra, and cases cited; *Brooks* v. *Singer,* 147 Conn. 719, 158 A.2d 745. There was no abuse of discretion in this case.

In this opinion PARMELEE, J., concurred.